UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEVEN HEDRICK, ) | |
|     Plaintiff, ) | |
| ) | |
|   vs. ) | 1:04-cv-0015-RLY-WTL |
| ) | |
| METROPOLITAN SCHOOL DISTRICT ) | |
| OF LAWRENCE TOWNSHIP, and ) | |
| BRADFORD ESHELMAN ) | |
|     Defendants. ) | |

**ENTRY ON PLAINTIFF'S MOTION FOR POST-JUDGMENT RELIEF**

**I.   Introduction and Procedural History**

Plaintiff, Steven Hedrick, was formerly employed as Dean of Students at Lawrence Central High School ("LCHS") in Indianapolis, Indiana. Following his termination in November 2002 for alleged inappropriate contact with a female student, Plaintiff filed a Complaint against defendant, the Metropolitan School District of Lawrence Township (the "School"), alleging that his termination was the product of race discrimination in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. ("Title VII"), 42 U.S.C. § 1981, and that he had been deprived of his occupational liberty interest without due process of law under the 5th and 14th Amendments through 42 U.S.C. § 1983. Plaintiff also brought a state law defamation claim against defendant Bradford Eshelman, the Assistant Superintendent of Human Resources for the School. Plaintiff's prayer for relief included claims for compensatory damages, reinstatement to

1

the position of Dean of Students, and "[a]ny and all other legal and/or equitable relief."

On April 12, 2005, Defendants filed a motion for summary judgment. In Plaintiff's Response, Plaintiff conceded that his substantive due process and state law defamation claims were fatally flawed. Plaintiff also abandoned his claim for reinstatement and narrowed the issue of his race discrimination claim to whether the School discriminated against him during its investigation of his alleged misconduct. The court therefore granted Defendants' motion with respect to Plaintiff's substantive due process and defamation claims, and denied Defendants' motion with respect to Plaintiff's Title VII and Section 1981 race discrimination claims.

On April 17, 2006, Plaintiff filed a joint stipulation dismissing his Section 1981 claim. Thus, the only claim remaining for the April 21, 2006, jury trial was Plaintiff's Title VII race discrimination claim.

On April 22, 2006, following a two-day trial, the jury found in favor of Plaintiff, but failed to award him compensatory damages. The pertinent portion of the special verdict form read as follows:

> Has the plaintiff, Mr. Hedrick, proven by a preponderance of the evidence that he was treated differently with respect to the terms and conditions of his termination, that is, that the School District treated Mr. Hedrick differently during the investigative process and failed to offer Mr. Hedrick the opportunity to resign and receive certain pay and benefits before his termination proceedings because of his race?

On August 23, 2006, the court entered judgment. In this motion, Plaintiff requests that the judgment be amended to include an award of equitable and injunctive relief

pursuant to FED. R. CIV. P. 59(e).

## II.    Standard of Review

FED. R. CIV. P. 59(e) provides: "Any motion to alter or amend a judgment shall be filed no later than 10 days after the entry of the judgment." The Rule does not provide the court much guidance with respect to the type of relief requested by Plaintiff. Seventh Circuit case law on the subject provides that the court may grant a motion to alter or amend judgment "if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996). However, it is worthy of note that "'[a] Rule 59(e) motion may not be used to present evidence that could and should have been presented prior to the entry of final judgment.'" *Id*. at 324 (quoting *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 867 (7th Cir. 1996)).

## III.    Discussion

A victim of discrimination in violation of Title VII is presumptively entitled to complete relief. *Miles v. State of Indiana*, 387 F.3d 591, 599 (7th Cir. 2004); *Hutchinson v. Amateur Elec. Supp., Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994). To that end, the court is authorized "to order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate." *See* 42 U.S.C. § 2000e-5(g). "The [] court must exercise its equitable power in a manner consistent with the objectives

of Title VII." *Miles*, 387 F.3d at 599. Thus, the court's task is to craft a remedy which will make the victim of unlawful discrimination whole. *Id*.

    **A.**    **Injunctive Relief**

        **1.**    **Plaintiff's request for a policy change.**

In determining whether to grant injunctive relief, the court considers "whether the employer's discriminatory conduct could persist in the future." *Bruso v. United Airlines, Inc.*, 239 F.3d 848 (7th Cir. 2001). Relevant to this inquiry is a finding that the individuals responsible for the discriminatory practice are still employed by the employer. *Id*.

Plaintiff requests that the court issue "an order enjoining the School District from conducting its investigative process of teachers accused of engaging in inappropriate behavior in a discriminatory fashion on the basis of race." (Plaintiff's Motion at 4). In support of Plaintiff's position, Plaintiff cites to the fact that the two individuals involved in the investigation into Plaintiff's alleged misconduct, Bradford Eshelman, the School's Assistant Superintendent of Human Resources, and Charles Rubright, the School's attorney, are still employed by the School and have primary responsibility for the School's personnel matters.

The Third Circuit rejected a similar request in *Cardenas v. Massey*, 269 F.3d 251 (3rd Cir. 1991). In that case, Plaintiff brought Title VII and Section 1981 claims against his former employer, New Jersey's Administrative Office of the Courts ("AOC"). Plaintiff alleged that when he was hired by the AOC, he was intentionally classified in the

4

wrong pay grade because of his national origin.  After he was no longer employed there, Plaintiff sought an injunction requiring the implementation of specific anti-discrimination policies and retroactive changes to his employment records that reflected the correct pay grade and placed more favorable performance evaluations in his file.

The Third Circuit rejected those claims as a matter of law, holding that because he was no longer employed by the AOC, the policy changes he sought could not benefit him.

> Because Cardenas is no longer employed by the AOC, he will not be affected by its implementation of, or failure to implement, new anti-discrimination policies.  Therefore, a change in AOC anti-discrimination policies will not make him "whole" or remedy violations he contends the defendants committed.

*Cardenas*, 269 F.3d at 265.  The Third Circuit also explained that to the extent he sought relief for ongoing discrimination at the AOC against current AOC employees,  Plaintiff lacked standing, as one cannot sue for the violation of a third-party's constitutional rights. *Id*. at 265 n. 9.

Here, Plaintiff was not employed by the School at the time he brought his claim, and he abandoned his reinstatement claim prior to trial.  Therefore, any prospective policy change regarding how sexual misconduct claims are investigated cannot impact him. Plaintiff also lacks standing to seek the injunction because he cannot show more than a theoretical risk that the School's current policies could negatively impact him. *Palmer v. City of Chicago*, 755 F.2d 560, 571-72 (7th Cir. 1985) (A party has standing to assert an injunction regulating future conduct if there is a real and immediate threat of future injury, as opposed to a threat based upon speculation and conjecture).  Accordingly,

Plaintiff's claim for injunctive relief in form of policy changes is **DENIED**.

### 2. Plaintiff's request to modify his personnel file.

Plaintiff asks the court to order the School to expunge the "derogatory allegations made against him and information regarding his termination from his personnel file." Plaintiff's Motion at 8. In addition to or in lieu of expungement of his file, Plaintiff asks the court order the School "to place a notice, which details the jury verdict, in his permanent personnel file." *Id*. at 9.

Plaintiff's claim that he is entitled to have the School modify its internal records to reflect the jury's verdict fails in light of his decision to jettison his reinstatement claim and concede the legitimacy of his termination. The Third Circuit rejected a similar claim in *Cardenas*. Cardenas asked that the Court issue an injunction requiring his former employer to alter his employment records, including changing his employment evaluations. As to that claim, the Court stated:

> Regarding Cardenas' 'novel' request for an injunction requiring the AOC to alter his performance evaluations and pay-grade classification to reflect not what they actually were but what they would have been without discrimination, he has presented no precedent, nor have we found one, granting equitable relief which would require a public agency to complete its records counterfactually. We therefore affirm the District Courts grant of summary judgment . . . regarding Cardenas' claim of equitable relief.

*Cardenas*, 269 F.3d at 265.

As previously stated, Plaintiff chose not to challenge his termination. Plaintiff cannot now ask the court to find that his termination was unjustified for purposes of his request for relief when he conceded the propriety of his termination. Accordingly,

Plaintiff's request to order the School to modify Plaintiff's personnel records to include the jury's verdict is **DENIED**.

### B. Back pay

Plaintiff also seeks back pay in the form of lost fringe benefits, including his accumulated sick and personal leave days. *See Curler v. City of Fort Wayne*, 591 F.Supp. 327 (N.D. Ind. 1984). The Seventh Circuit case of *Hertzberg v. SRAM Corp.*, 261 F.3d 651 (7th Cir. 2001), forecloses Plaintiff's request.

In *Hertzberg*, the plaintiff brought suit against her employer for sexual harassment and retaliatory discharge. At trial, the jury returned a verdict for the plaintiff on her sexual harassment claim, but for her employer on the retaliatory discharge claim. Plaintiff then sought equitable relief in the form of front and back pay. The district court granted the same, and the employer appealed. The Seventh Circuit reversed, finding that a victim of discrimination who leaves her employment due to discrimination is entitled to equitable remedies upon a showing of either an actual or constructive discharge. Because the jury did not find in her favor on the retaliatory discharge claim, "there was no discriminatory discharge upon which the award of lost pay could be based." *Id*. at 661.

Here, Plaintiff did not challenge the propriety of his termination from the School. Rather, he challenged the *process* by which the School administration investigated the sexual misconduct claim against him, and argued that he was not offered the *opportunity* to resign and receive pay and benefits which other similarly-situated white male teachers were accorded. Because the lawfulness of his termination was not submitted to the jury

(and thus, there is no finding of a discriminatory discharge), Plaintiff is not entitled to a back pay award. Plaintiff's request is **DENIED**.

### C.     Plaintiff was given the opportunity to argue damages.

The issue argued to the jury was based on a theory of lost opportunity – that Plaintiff did not have the opportunity to settle with the School prior to his termination like his white counterparts did. In this regard, Plaintiff presented evidence of the settlement offers other white teachers received who were alleged to have engaged in similar misconduct, and testified that he did not receive a comparable offer. In closing argument, Plaintiff's counsel cited to evidence established at trial which reflected that three other white teachers who engaged in similar misconduct and who were also investigated by Brad Eshelman were given their full pay for the remainder of the school year. Plaintiff's attorney then suggested to the jury that they could award Plaintiff the remainder of his salary for the 2003 school year – the year he was terminated – which was calculated to be six months salary, or $40,821.50. (Defendant's Ex. A, Transcript of Closing Argument at 20). The monetary figure cited by Plaintiff's attorney, though couched in terms of Plaintiff's request for emotional damages, was essentially Plaintiff's way of acquiring the type of package deal that his white counterparts received – pay and benefits. The fact that Plaintiff's attorney failed to present evidence of lost fringe benefits does not allow Plaintiff to acquire from the court what he did not obtain from the jury – compensatory damages.

### IV. Conclusion

For the reasons set forth above, the court **DENIES** Plaintiff's Motion for Post-Judgment Relief (Docket # 106). The court finds the denial of the equitable remedies Plaintiff sought does not frustrate the Title VII's objective of making the p

laintiff whole. *Miles*, 387 F.3d at 599. Plaintiff was given the opportunity to present his case to the jury, and for strategic reasons, Plaintiff chose not to challenge the propriety of his discharge. He cannot now seek from the court remedies which either would not pertain to him or were otherwise foreclosed by the jury verdict.

**SO ORDERED** this  26th   day of January 2007.

                                                                  _____
                                                                  RICHARD L. YOUNG, JUDGE
                                                                  United States District Court
                                                                  Southern District of Indiana

Electronic Copies to:

Denise K. LaRue
HASKIN LAUTER LARUE & GIBBONS
dlarue@hlllaw.com

Kevin B. McCoy
LOCKE REYNOLDS LLP
kmccoy@locke.com

Robb Alan Minich
HASKIN LAUTER LARUE & GIBBONS
robbminich@hotmail.com

Anthony W. Overholt
LOCKE REYNOLDS LLP
aoverholt@locke.com

Thomas E. Wheeler II
LOCKE REYNOLDS LLP
twheeler@locke.com